UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RICHARD JOHN SCOVILLE,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 2:16-CV-00180-JTR<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 15, 16. Attorney Rosemary B. Schurman represents Richard John Scoville (Plaintiff); Special Assistant United States Attorney Jennifer A. Kenney represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## JURISDICTION

Plaintiff filed applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) on May 6, 2012, Tr. 216, alleging disability since October 31, 2010, Tr. 197-202, due to hepatitis C, Rocky Mountain Spotted Fever with inflammation around the heart, and high blood pressure, Tr. 231. The

ORDER GRANTING DEFENDANT'S MOTION . . . - 1

applications were denied initially and upon reconsideration. Tr. 103-111. Administrative Law Judge (ALJ) Donna L. Walker held a hearing on November 26, 2014 and heard testimony from Plaintiff, medical expert Minh Vu, M.D., and vocational expert Daniel McKinney. Tr. 48-67. At the hearing, Plaintiff, through his attorney, amended his onset date to February 15, 2012. Tr. 51. The ALJ issued an unfavorable decision on January 9, 2015. Tr. 12-22. The Appeals Council denied review on April 28, 2016. Tr. 1-6. The ALJ's January 9, 2015 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on May 30, 2016. ECF No. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 55 years old at the amended date of onset. Tr. 197. Plaintiff completed four or more years of college in 1992. Tr. 232. When applying for benefits, he reported that he had stopped working as of October 31, 2010. Tr. 231. His work history included being a painter and working with log furniture. Tr. 232, 257-260. In August of 2012, Brian LaSalle, ARNP stated that Plaintiff had a history of working in the construction trades and was presently working as a concrete finisher. Tr. 302. In June of 2013, Plaintiff reported to the Spokane Foot Clinic that he had been getting a rental property ready and had been on his feet for long hours. Tr. 382. At the hearing, Plaintiff testified that he had been paid "under the table" for most of his work as an adult. Tr. 61.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo,

deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once the claimant establishes that physical or mental impairments prevent him from engaging in his previous occupations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs exist in the national economy which the claimant can perform. *Batson v. Comm'r*

*of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (9th Cir. 2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On January 9, 2015, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since February 15, 2012, the amended date of onset. Tr. 14.

At step two, the ALJ determined Plaintiff had the following severe impairments: hepatitis C; liver cirrhosis; and polyarthralgias. Tr. 14.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 16.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined he could perform a full range of medium work, stating "[h]e can lift and/or carry up to 50 pounds occasionally (1/3 of the workday) and 25 pounds frequently (2/3 of the workday). He can stand and/or walk up to 6 hours and sit up to 6 hours in an 8-hour workday." Tr. 17. The ALJ identified Plaintiff's past relevant work as furniture assembler, painter, and sign painter. Tr. 20. The ALJ concluded that Plaintiff was able to perform his past relevant work. *Id*.

In the alternative to a step four determination, at step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of janitor/cleaner and machine packager. Tr. 21. The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from February 15, 2012 through the date of the ALJ's decision, January 9, 2015. Tr. 21.

**ISSUES**

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) failing to properly weigh medical source opinions in the file; (2) failing to form an accurate residual functional capacity determination, and (3) failing to properly consider the testimony of a lay witness.[1]

**DISCUSSION**

**A.  Medical Source Opinions**

Plaintiff argues the ALJ failed to properly consider and weigh the medical opinion expressed by James Pittman, Ph.D., ARNP, Minh Vu, M.D., Brian LaSalle, ARNP, and Howard Platter, M.D.  ECF No. 15 at 3-17.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  Likewise, the ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician.  *Id.*

When a treating physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons.

---

[1]Plaintiff addressed issues one and two as major headings in his briefing. ECF No. 15.  However, he referenced issue three as part of his residual functional capacity argument.  *Id*. at 19.  Therefore, for clarity, the Court has separated the residual functional capacity argument from the lay witness testimony argument.

*Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).  When a treating physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion.  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).  Likewise, when an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons, and when an examining physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" to reject the opinion.  *Lester*, 81 F.3d at 830-831.

The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating her interpretation thereof, and making findings.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  The ALJ is required to do more than offer her conclusions, she "must set forth [her] interpretations and explain why they, rather than the doctors', are correct."  *Embrey v. Bowen*, 849 F.2d 418, 421-422 (9th Cir. 1988).

### 1. James Pittman, Ph.D., ARNP

On October 15, 2014, Dr. Pittman completed a mini-mental status examination and completed written questions submitted by Plaintiff's attorney.  Tr. 368-381.  In these questions, Dr. Pittman opined that Plaintiff could occasionally lift and carry 50 pounds, frequently lift and carry 25 pounds, stand and walk for a total of 3 hours in an 8 hour work day, sit for a total of 3 hours in an 8 hour work day, sit at one time for 30 minutes, stand at one time for 30 minutes, frequently twist, handle, finger, and feel, and occasionally, stoop, crouch, climb stairs, climb ladders, reach, and push/pull.  Tr. 372-376.  Additionally, he would need to walk every 20 minutes for relief from sitting, need to shift at will between sitting or standing/walking, need to lie down up to two times in an eight hour period, and occasionally need to use a cane.  *Id*.  He opined that Plaintiff's pain would reduce

concentration or attention significantly and produce emotional stress or reduce the ability to cope with stress 50 percent of the time. Tr. 377. Dr. Pittman also completed a medical source opinion on Plaintiff's mental functioning, in which he opined Plaintiff would have difficulty in several areas. Tr. 379-380.

The ALJ gave this opinion no weight because it was inconsistent with his treatment notes in 2013 and the treatment note completed with the opinion, specifically noting that the treatment note found Plaintiff's gait was unremarkable with no mention of sensation testing, Tr. 349, and this was inconsistent with the opinion, which noted Plaintiff had decreased vibratory and monofilament sensation, an abnormal gain, and occasionally needed the use of a cane, Tr. 375-376. Additionally, the ALJ noted that the mini-mental status exam was within normal limitations, which did not support the later opinion that Plaintiff's pain would reduce his concentration or cause emotional stress or result in a limited mental functioning. Tr. 19-20.

As Defendant argues, despite Dr. Pittman's Ph.D., he is not considered an acceptable medical source. *See* ECF No. 16 at 7-8. Acceptable medical sources are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. §§ 404.1502, 416.902. Dr. Pittman's Ph.D. is in nursing. *See* Country Homes Nurse Practitioners, http://www.countryhomesnursepractitioners.com/The-Nurse-Practitioners.html (last accessed December 6, 2016). He qualifies as a nurse practitioner, which for claims filed with the agency prior to March 27, 2017 is not considered an acceptable medical source. 20 C.F.R. §§ 404.1502, 416.902.

An ALJ is required to consider evidence from non-acceptable medical sources and non-medical sources. 20 C.F.R. §§ 404.1527(f), 416.927(f). An ALJ must give "germane" reasons to discount evidence from non-acceptable medical sources and non-medical sources. *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014).

Here, the ALJ provides examples supported by substantial evidence of how Dr. Pittman's records do not support his opinion. As such, the ALJ has provided legally sufficient reasons for rejecting Dr. Pitman's opinion.

### 2. Minh Vu, M.D., F.C.C.P.

At the November 26, 2014 hearing, Dr. Vu testified that he had reviewed the record through exhibit 13F and he asked Plaintiff multiple questions regarding his medical history. Tr. 53-55. Dr. Vu testified that Plaintiff had hepatitis C, hypertension without any complications, a history of Rocky Mountain Spotted Fever, and an undocumented mention of anxiety. Tr. 55-56. Dr. Vu testified that based on the fact that Plaintiff still had a liver problem as evidenced in 2013 testing and a lack of evidence showing that his liver returned to normal functioning after his hepatitis C treatment, he was limited to a full range of light work. Tr. 56.

The ALJ gave Dr. Vu's opinion no weight because it was based on a lack of follow up laboratory studies that indicated Plaintiff's hepatitis C was in sustained remission. Tr. 20. The ALJ noted that testing at week four of treatment and again in June of 2014 had shown undetectable viral loads and Plaintiff's failure to perform the requested laboratory studies in early treatment and at 12 weeks post treatment did not negate the negative findings. Tr. 20 *citing* Tr. 425, 435, 444, 446. The ALJ deemed that these test results showed that Plaintiff's hepatitis C was in sustained remission. *Id*.

The record is void of any provider stating that Plaintiff's disease was in sustained remission, only that Plaintiff had failed to obtain the testing necessary to establish whether or not had "achieve[d] a sustained viral response." Tr. 446, 459. However, in the evidence not reviewed by Dr. Vu was an August 4, 2014 Viral Load test that showed no virus was detected.[2] Tr. 482. Considering his viral load

---

[2]On April 3, 2014, Plaintiff was 8 weeks into his 12 week course. Tr. 435. Therefore, he had 4 weeks remaining in treatment plus the 12 week post treatment

was undetectable after 12 weeks post treatment, he had achieved a sustained viral response. While the ALJ is not a physician and cannot determine if a claimant has reached "sustained remission," the substantial evidence supports the notion that Plaintiff's treatment was a success, which supports the ALJ's rejection of Dr. Vu's opinion. While the ALJ did not specifically cite to the August 4, 2014 testing to support his determination, it further supports his rationale for rejecting Dr. Vu's opinion. *See Tackett*, 180 F.3d at 1098 ("a court must consider the record as a whole" when determining if the ALJ errored). As such, the ALJ's determination is supported by substantial evidence.

Further, the ALJ noted that Plaintiff was found to be asymptomatic prior to treatment. Tr. 20 *citing* Tr. 405. The full statement in Dr. Ferrin's report was "[h]e is feeling fatigued lately but is otherwise asymptomatic from his liver disease." ECF No. 15 at Tr. 405. Additionally, the ALJ found Plaintiff to have no significant side effects from the Interferon that required treatment. Tr. 20 *citing* Tr. 425. Dr. Ferrin's statement regarding Plaintiff's fatigue was Plaintiff's subjective report, which the ALJ found less than fully credible and Plaintiff did not challenge. As such, these statements support the ALJ's determination that Dr. Vu's opinion was inconsistent with Plaintiff being asymptomatic prior to treatment and having no significant side effects from the treatment itself. As such, the ALJ did not error in his treatment of Dr. Vu's opinion.

### 3. Brian LaSalle, ARNP

On August 29, 2012, Nurse LaSalle completed a Physical Functional Evaluation form for the Washington Department of Social and Health Services. Tr. 297-299. Nurse LaSalle limited Plaintiff to medium work, defined as "[a]ble to lift 50 pounds maximum and frequently lift and/or carry up to 25 pounds." Tr.

---

wait would place the appropriate testing any time after July 24, 2014. Therefore, the August 4, 2014 test is more than twelve weeks post treatment

299.

The ALJ gave this opinion significant weight, citing S.S.R. 06-03p. Tr. 19. Social Security Ruling 06-03p sets forth factors for an ALJ to consider when addressing evidence from an other source and allows an ALJ to give more weight to non-acceptable medical sources than to acceptable medical sources. Tr. 19. Here, Nurse LaSalle was Plaintiff's treating source and his opinion was consistent with that of Dr. Platter. Considering the ALJ provided legally sufficient reasons for rejecting the opinions contrary to Nurse LaSalle, the Court will not disturb the weight given to it by the ALJ.

### 4. Howard Platter, M.D.

On December 13, 2012, Dr. Platter reviewed Plaintiff's available records and opined Plaintiff could occasionally lift and/or carry 50 pounds, frequently lifting and/carry 25 pounds, stand and/or walk six hours, sit more than six hours, and push and/or pull unlimited. Tr. 100.

The ALJ gave this opinion significant weight, stating that it was supported by the longitudinal medical record, which showed primarily a diagnosis of hepatitis C with liver cirrhosis that had been treated. Tr. 18-19. As discussed above, August 4, 2014 testing showed that Plaintiff had a non-detected viral load after 12 weeks post treatment. Tr. 482. Therefore, the ALJ's conclusion is supported by substantial evidence. Considering the ALJ provided legally sufficient reasons for rejecting the opinions of other providers whose opinions varied in the record, the Court will not disturb the weight given to Dr. Platter and Nurse LaSalle.

### B. Residual Functional Capacity

Plaintiff argues the ALJ's residual functional capacity determination is in error because it failed to consider limitations resulting from fatigue from cirrhosis, hepatitis, and Rocky Mountain Spotted Fever and pain from Plaintiff's polyarthralgias. ECF No. 15 at 19-20.

A claimant's residual functional capacity is "the most [a claimant] can still

do despite [his] limitations." 20 C.F.R. § 416.945(a)(1); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining residual functional capacity as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs."). In formulating a residual functional capacity determination, the ALJ weighs medical and other source opinions and also considers the claimant's credibility and ability to perform daily activities. *See*, *e.g.*, *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009).

The ALJ addressed Plaintiff's complaints of fatigue and pain when discussing Plaintiff's testimony. Tr. 17-18. The ALJ found the intensity, persistence, and limiting effects of the fatigue and pain as Plaintiff alleged to be unreliable. Tr. 18. Plaintiff did not challenge the ALJ's determination regarding the credibility of his symptom statements in briefing. Therefore, the Court will not consider a challenge to Plaintiff's credibility. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (The court ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief). As such, the ALJ considered limitations from Plaintiff's fatigue and pain as she saw appropriate and this Court will not disturb her determination.

**C.     Lay Witness Testimony**

Plaintiff challenges the treatment of a written statement from Plaintiff's roommate, Nadine Van Stone. ECF No. 15 at 19.

An ALJ is required to consider evidence from non-medical sources including the evidence from family and friends "as to how an impairment affects a claimant's ability to work," *Sprague*, 812 F.2d at 1232; 20 C.F.R. §§ 404.1527(f), 416.927(f). An ALJ must give reasons that are "germane" to each whiteness to discount the testimony of each lay witness. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

The ALJ considered Ms. Van Stone's written statement, finding that the statement was "well written, and certainly supportive of the claimant; however, it does not overcome the objective evidence contained in this record that references being 'asymptomatic' prior to treatment at 13F/23, and having no significant side effects from the Interferon requiring treatment (13F/43), or the references to significant activities of daily living." Tr. 18. The ALJ's statement demonstrates that she considered the statement and provided reasons germane to Ms. Van Stone in concluding that it was due little weight.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Defendant** and the file shall be **CLOSED**.

DATED August 22, 2017.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE